1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHEN HALE,

11            Plaintiff,                        No. 2:09-cv-00391 JAM KJN PS

12        vs.

13   VACAVILLE HOUSING AUTHORITY,

14            Defendant.                        FINDINGS & RECOMMENDATIONS

15   _____/

16            Presently before this court is defendant Vacaville Housing Authority's motion to

17   dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

18   After careful consideration of the arguments and briefing submitted by the parties, for the reasons

19   set forth below, the undersigned will recommend that defendant's motion be granted and this

20   case be dismissed.

21   I.       BACKGROUND

22            Plaintiff Chen Hale, a pro se litigant (or in other words proceeding without

23   counsel), filed her complaint in this action on December 15, 2008 in the Northern District of

24   _____

25        [1] This action proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1), and was reassigned by an order entered
26   February 9, 2010.  (Dkt. No. 45.)

1  California.  (Dkt. No. 1)  On February 9, 2009, the Hon. Maxine M. Chesney, United States

2  District Judge of the Northern District of California, transferred this case to the Eastern District

3  of California, finding that venue appears proper herein.  (Dkt. No. 17.)

4          This court screened plaintiff's initial complaint pursuant to 28 U.S.C. §

5  1915(e)(2), which requires an inquiry into whether a plaintiff proceeding in forma pauperis has

6  stated a non-frivolous claim upon which relief may be granted.  (Dkt. No. 24.)  Finding that

7  plaintiff had not alleged all of her causes of action in a single document, Magistrate Judge

8  Edmund F. Brennan ordered that plaintiff file an amended complaint setting forth all pertinent

9  and consolidated facts and claims.  (Id. at 6.)  On May 27, 2009, plaintiff filed an amended

10  complaint, the operative pleading subject to challenge by the instant motion.  (Dkt. No. 27.)

11          On March 27, 2010, defendant filed a motion to dismiss plaintiff's amended

12  complaint.  First, defendant contends that this court lacks subject matter jurisdiction over

13  plaintiff's action.  Second, defendant argues that plaintiff fails to state a claim upon which relief

14  may be granted.  Plaintiff's complaint, a lengthy 123 pages including exhibits, alleges in essence

15  that she was wrongfully denied continued rent assistance benefits for "Section 8" housing.

16  Plaintiff filed an opposition to the motion to dismiss, Dkt. No. 61, and a host of other

17  procedurally impermissible documents, including a response to defendant's subsequent reply

18  brief and various documents entitled "submittal of evidence."  (See e.g., Dkt. Nos. 67, 70.)  The

19  court ordered the matter submitted, and on August 2, 2010, instructed plaintiff regarding her

20  filing of additional procedurally improper documents.  (Dkt. No. 72.)

21  II.    LEGAL STANDARDS

22          Defendant's motion to dismiss is brought pursuant to Rules 12(b)(1) and 12(b)(6)

23  of the Federal Rules of Civil Procedure.  A motion brought pursuant to Rule 12(b)(1) is a

24  challenge to the court's jurisdiction over the subject matter of the complaint.  Federal courts are

25  courts of limited jurisdiction.  Vacek v. UPS, 447 F.3d 1248, 1250 (9th Cir. 2006).  "A federal

26  court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively

2

1  appears." A-Z Int'l v. Phillips, 323 F.3d 1141, 1145 (9th Cir. 2003).  The plaintiff has the

2  burden of establishing that subject matter jurisdiction is proper.  Kokkonen v. Guardian Life Ins.

3  Co., 511 U.S. 375, 377 (1994).

4          A motion brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil

5  Procedure is a challenge to the sufficiency of the complaint.  Under the "notice pleading"

6  standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a

7  "short and plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P.

8  8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "A complaint may

9  survive a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains

10 'enough facts to state a claim to relief that is plausible on its face.'"  Coto Settlement v.

11 Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

12 (2009)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the

13 court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

14 Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal,

15 129 S. Ct. at 1949).  The court accepts all of the facts alleged in the complaint as true and

16 construes them in the light most favorable to the plaintiff.  Corrie v. Caterpillar, 503 F.3d 974,

17 977 (9th Cir. 2007).   The court is "not, however, required to accept as true conclusory

18 allegations that are contradicted by documents referred to in the complaint, and [the court does]

19 not necessarily assume the truth of legal conclusions merely because they are cast in the form of

20 factual allegations."  Paulsen, 559 F.3d at 1071 (citations and quotation marks omitted).

21          In ruling on a motion to dismiss pursuant to Rule 12(b), the court "may generally

22 consider only allegations contained in the pleadings, exhibits attached to the complaint, and

23 matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont,

24 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

25 III.   DISCUSSION

26          As defendant explains, section 8 of the United States Housing Act of 1937 (42

3

1   U.S.C. § § 1437 et seq.), as amended by the Housing and Community Development Act of 1974

2   ("Section 8") is a program which provides housing assistance to low income families.  The

3   Section 8 program is financed by the federal government, regulated by the Federal Department of

4   Housing and Urban Development and is administered by local public housing authorities, such as

5   defendant Vacaville Housing Authority ("defendant" or "VHA").  See generally Barrientos v.

6   1801-1825 Morton LLC, 583 F.3d 1197, 1202 (9th Cir. 2009).

7          Plaintiff seeks an order overturning the VHA's decision to terminate her Section 8

8   housing assistance.  The VHA reached that decision based upon alleged fraud by plaintiff and her

9   failure to disclose the receipt of funds from third parties.  Plaintiff desires a ruling contrary to the

10  decision of an administrative hearing officer who upheld the decision of the VHA to terminate

11  plaintiff's participation in the Section 8 program.  (See Dkt. No. 27 at 31-38, Hearing Officer's

12  Ruling).

13         Plaintiff alleges three causes of action in her amended complaint:  (1) National

14  origin discrimination against limited English proficient ("LEP") persons under Title VI of the

15  Civil Rights Act of 1964, Executive Order 13155, August 11, 2000; (2) Discrimination on the

16  basis of disability in state and local government under Title II of the Americans with Disabilities

17  Act ("ADA"), Public Law 101-336; and (3) California Government Code sections 7290-7299.8

18  (the Dymally-Alatorre Bilingual Services Act).  In her amended complaint, plaintiff seeks an

19  order reversing the termination of her Section 8 housing, and costs and damages incurred as a

20  result of the termination.  (Dkt. No. 27 at 1, 9.)

21         A.     Defendant's Request for Judicial Notice

22         As a preliminary matter, defendant requests judicial notice of the City of

23  Vacaville's resolution declaring the need for a housing authority in the City of Vacaville, and

24  declaring the City Council of the City of Vacaville to be commissioners of the VHA.  (Dkt. No.

25  55-1.)  Facts subject to judicial notice may be considered on a motion to dismiss without

26  converting the motion to dismiss into one for summary judgment.  Mullis v. United States

4

1  Bankruptcy Court, 828 F.2d 1385, 1388 (9th Cir. 1987); Mack v. South Bay Beer Distrib., 798

2  F.2d 1279, 1282 (9th Cir. 1986) ("on a motion to dismiss a court may properly look beyond the

3  complaint to matters of public record").  Accordingly, the court hereby recommends that

4  defendant's request be granted pursuant to Federal Rule of Evidence 201 and that the court take

5  judicial notice of the City of Vacaville's Resolution Number 1976-L-5 establishing the VHA as

6  set forth in the declaration of Michelle A. Thornbrugh.  (Dkt. No. 55-1 at 3-7.)  See

7  Manufactured Home Communities, Inc. v. City of San Jose, 358 F. Supp. 2d 896, 904 (N.D. Cal.

8  2003) (taking judicial notice of city ordinances).

9        B.     Lack of Jurisdiction

10             Defendant first argues that this case must be dismissed for lack of jurisdiction

11  because the federal court may not overturn a state administrative agency's decision.  It is true that

12  this matter does not come to this court with an empty slate.  On August 22, 2008, the VHA

13  terminated plaintiff's participation in the Section 8 program.[2]  (Dkt. No. 27 at 27.)  Plaintiff

14  appealed that decision.  (Dkt. No. 27 at 34.)  On September 16, 2008, plaintiff's appeal was

15  heard before Vincent L. Pastorino, Hearing Officer for the Institute for Administrative Justice

16  ("Hearing Officer") in Vacaville, California.[3]  (Dkt. No. 27 at 31.)  Plaintiff appeared at the

17  hearing and represented herself.  (Id.)  Dolores Munoz, VHA senior housing specialist, appeared

18  on behalf of and represented the VHA.  (Id.)  VHA called several witnesses on its behalf.  (Id.)

19  In a detailed opinion, the Hearing Officer considered whether plaintiff violated her obligations to

20  disclose certain financial information, and if so, whether the VHA's decision to terminate

21  plaintiff from Section 8 housing participation was made in accordance with HUD regulations and

22  VHA policies.

23

24        [2]  The court may consider documents attached to the complaint when reviewing a motion
    to dismiss.  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

25

26        [3]  An aggrieved party may seek a hearing regarding their entitlement to Section 8 benefits
    pursuant to, inter alia, 24 C.F.R. §§ 982 et seq.

1    The Hearing Officer considered plaintiff's apologies for her failure to disclose all

2 of her financial obligations, and considered her defenses that (1) she believed that all government

3 benefits came from the same government agency and thus that she would not need to disclose

4 them; (2) that her understanding of the English language was poor; and (3) that "her mind has

5 been confused since she suffered a serious head injury in August 2000." (Dkt. No. 27 at 34-35.)

6    The Hearing Officer found that plaintiff understood the application process well

7 enough to disclose certain financial obligations, and that her failure to disclose her spousal

8 support income was done with an intent to mislead the VHA so that the VHA would not consider

9 that spousal support income when determining plaintiff's Section 8 benefit amount. (Dkt. No. 27

10 at 36.) The Hearing Officer summarized his findings of fact and conclusions of law as follows:

11          The Hearing Officer considered the circumstances of Ms. Hale's
            language limitations and head-injury in the above discussion of fraud.
12          While those circumstances may have impaired Ms. Hale's ability to
            understand some of the questions on the Personal Declaration Forms
13          and some of the VHA's other policies, such as the requirement to
            report new bank accounts within 30 days on a specific form, the
14          Hearing Officer has found that Ms. Hale did understand her obligation
            to disclose the spousal support. She intentionally mislead the VHA by
15          withholding the spousal support information, and knew that she would
            gain an advantage in benefits by doing so. Therefore, the
16          circumstances regarding Ms. Hale's language limitations and head
            injury do not meaningfully diminish Ms. Hale's culpability. . . .
17          Accordingly, the VHA's decision to terminate is upheld.

18 (Dkt. No. 27 at 37.)

19    Thereafter, on October 7, 2008, VHA mailed plaintiff a letter informing her of the

20 results of the hearing held on September 16, 2008. (Dkt. No. 27 at 28.) That letter informed

21 plaintiff that the VHA's termination decision was now final. Further it notified plaintiff that the

22 "time within which judicial review of this decision must be sought is governed by Code of Civil

23 Procedures [sic] Section 1094.6." (Id.)

24    Plaintiff thus had a right under California law to appeal the Hearing Officer's

25 decision to the state courts. See Cal. Civ. Proc. Code §§ 1094.5, 1094.6. However, plaintiff

26 instead filed this federal action. This course of conduct prohibits the instant action on two

6

1   jurisdictional fronts:  (1) failure to exhaust administrative remedies; and (2) collateral estoppel

2   based on the preclusive effect of the prior hearing.

3                    1.    Exhaustion of Administrative Remedies

4            Plaintiff did not exhaust her administrative remedies in state court.  As set forth in

5   the VHA's letter to plaintiff dated October 7, 2008, plaintiff's right to challenge the final

6   decision of the Hearing Officer is governed by the procedures set forth in California Code of

7   Civil Procedure section 1094.6.  (Dkt. No. 27 at 28.)  California Code of Civil Procedure section

8   1094.5 provides a mechanism by which an aggrieved party may seek a writ of mandate to review

9   a final administrative decision following a hearing.  Section 1094.6 provides the timeframe in

10  which the aggrieved party may seek relief, generally 90 days following the date on which the

11  administrative decision becomes final.

12           Plaintiff was obligated to follow the procedures for review of the Hearing

13  Officer's decision by a California Superior Court.  See Cal. Civ. Proc. Code § 1094.5; Johnson v.

14  City of Loma Linda, 24 Cal. 4th 61, 99 (2000) (holding that a FEHA action brought by a

15  terminated employee was barred by laches where the employee failed to timely file a petition for

16  a writ of administrative mandamus in the California courts).  Plaintiff failed to bring any

17  administrative mandamus action to challenge the VHA's revocation of her Section 8 benefits or

18  the Hearing Officer's decision.  Plaintiff has not articulated any factual or legal argument for her

19  failure to pursue that remedy, and may not now seek to invoke a belated, parallel attack on the

20  absent state court proceedings.[4]  Cf. Kenneally v. Lungren, 967 F.2d 329, 323-33 (9th Cir. 1992)

21

22           [4]  In opposition, plaintiff contends that the United States Department of Housing and
     Urban Development gave her a letter which stated that she could have a Fair Housing Act
23   violation brought before a federal administrative law judge or for trial in a United States District
     Court.  (Dkt. No. 61 at 2.)  She attached a portion of that letter to her opposition brief.  (Dkt. No.
24   61 at 23-24.)  That letter, although relating to FHA claims not at issue in the instant amended
     complaint, provides even further support for the general proposition that once administrative
25   proceedings have begun, plaintiff must pursue appropriate remedies in the relevant forum.  It
     states in part:  "You also have the legal right to file a lawsuit in court . . . as long as an
26   Administrative Law Judge has not started a hearing on the record with respect to the charge."

1   (examining the California writ of mandate procedure and holding that "[t]his statutory

2   framework provides a meaningful opportunity for [the federal plaintiff] to present his

3   constitutional claims for independent judicial review prior to the [agency's] decision becoming

4   effective").  Plaintiff failed to exhaust her administrative remedies.

5           California courts would give preclusive effect to the Hearing Officer's decision

6   because plaintiff did not timely seek mandamus review of that decision under section 1094.5.

7   See Swartzendruber v. City of San Diego, 3 Cal. App. 4th 896, 903 (1992) (holding that a public

8   employee seeking to challenge a disciplinary action on, inter alia, federal constitutional grounds,

9   must first seek section 1094.5 mandamus review in state court).[5]  This failure to exhaust means

10  that the California courts would have accorded the Hearing Officer's findings preclusive effect as

11  a final state court judgment.  See Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 650-51 (9th Cir.

12  1988); Briggs v. City of Rolling Hills Estates, 40 Cal App. 4th 637, 649-50 (1995).  This binding

13  effect is necessary "to 1) accord proper respect to the administrative agency's quasi judicial

14  procedures and to preclude the party from circumventing the established process for judicial

15  review via a petition for administrative mandate; and 2) provide a uniform practice of judicial,

16  rather than jury, review of quasi-judicial administrative decisions."  Garcia v. Los Banos Unified

17  Sch. Dist., 418 F. Supp. 2d 1194, 1204 (E.D. Cal. 2006) (recognizing additional policy

18  arguments in requiring exhaustion of administrative remedies, including preventing a plaintiff

19  from getting a second bite of the "procedural apple").[6]  Hence, this court finds that the Hearing

20  Officer's unchallenged ruling in favor of the VHA precludes the instant action.

21

22      [5]  The court in Swartzendruber also explained that while California courts have
    sometimes referred to this requirement as "administrative exhaustion," this rule is more properly
23  understood as collateral estoppel for plaintiff's failure to challenge the adverse action in state
    court.  Hence, mandamus bars litigating the issues that could have been raised in that action in a
24  subsequent damages action.  Id.

25      [6]  Any substantive or procedural defects in the underlying administrative proceeding
    could also have been raised in a mandamus proceeding.  See Westlake Community Hosp. v.
26  Superior Court, 17 Cal. 3d 465, 484 (1976).

1          2.      Collateral Estoppel

2          Additionally and alternatively, plaintiff is estopped from relitigating this action

3    based on the preclusive effect of the Hearing Officer's decision.  The decision by the Hearing

4    Officer in the underlying proceedings is entitled to preclusive effect if (1) the Hearing Officer

5    was acting in a judicial capacity and resolved issues of fact properly before it and (2) the

6    traditional collateral estoppel criteria are met.  Eilrich, 839 F.2d at 633 (citing United States v.

7    Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966)).  In California, these traditional criteria

8    are: (1) the identical issue or issues were necessarily decided in the administrative proceeding;

9    (2) the administrative proceeding reached a final judgment on the merits; and (3) the party

10   against whom estoppel is being asserted was a party (or in privity with a party) to the prior

11   proceeding."  Id.  Plaintiff does not claim that the revocation proceedings failed to meet these

12   requirements.

13         The complaints that plaintiff submitted to the Hearing Officer were virtually

14   identical to those set forth in the amended complaint here.  Plaintiff attached to her complaint a

15   copy of the hearing officer's resulting decision.  (Dkt. No. 27 at 31-38.)  Both parties to the

16   instant action were present at the hearing, the parties were afforded the opportunity to call and

17   examine witnesses and were permitted to present facts and evidence relevant to their positions.

18   The conduct covered by the administrative hearing included all of the factual matters covered by

19   the instant claim, including plaintiff's disclosure or non-disclosure of pertinent financial

20   information, her alleged wrongful termination from Section 8 housing, and her alleged English

21   language learner and disability status.  The Hearing Officer addressed plaintiff's claims that she

22   had difficulty understanding the English language and that she was confused due to a head injury,

23   and specifically found that "Ms. Hale demonstrated that she was quite capable in understanding

24   the allegations brought against her by the VHA, and she was also capable in explaining her side

25   of the case . . . ."  (Dkt. No. 27 at 35.)  After oral argument and a full opportunity to be heard, the

26   Hearing Officer issued a lengthy, thoroughly reasoned final decision, to which plaintiff was a

1    party.

2           Allowing federal court relitigation of administrative decisions would "encourage

3    litigants to forego state court review to receive federal review in [] actions." Elrich, 839 F.2d

4    635.  Similarly, in this case, permitting plaintiff to relitigate the termination of her Section 8

5    housing benefits would encourage litigants to forego state court judicial review of administrative

6    decisions, the provisions for which are expressly set forth in California Civil Procedure Code §§

7    1094.5 and 1094.6.  See also Club Moulin Rouge LLC v. City of Huntington Beach, 2005 WL

8    5517234, at *14 (C.D. Cal. 2005) (stating that if an adequate opportunity for review is available,

9    a losing party cannot obstruct the preclusive use of the state administrative decision simply by

10   foregoing [the] right to appeal") (quoting Eilrich, 839 F.2d at 632)).  As the Ninth Circuit has

11   long recognized, a party who elects an administrative forum for review of an adverse action must

12   succeed in overturning that administrative decision through the judicial mandamus review

13   procedure prior to filing a suit for damages.  See Miller v. County of Santa Cruz, 39 F.3d 1030,

14   1038 (1994) (reiterating the Ninth Circuit's longstanding policy respecting state court systems for

15   review of administrative decisions, arising out of concerns of comity and finality).

16          At least one other court in this district has found that section 1094.5 precluded a

17   subsequent federal action.  In Jones v. City of Orange Cove, 2010 WL 2353529 (E.D. Cal., June

18   9, 2010), the plaintiff filed a federal action challenging the actions of a city building inspector

19   regarding the uninhabitability of a homeowner's property.  The court held that plaintiff's failure

20   to seek a writ of administrative mandamus rendered the city council's decision res judicata,

21   precluding plaintiff from pursuing the instant action.  Id. at *6 (holding that to "challenge not

22   only the City Council's findings, but also its jurisdiction, [p]laintiff's recourse was an action for

23   administrative mandamus pursuant to [California Code of Civil Procedure] section 1094.5").

24          In sum, plaintiffs failure to obtain review by way of administrative mandamus

25   bars the instant action, both because she failed to exhaust her administrative remedies and

26   because the prior proceedings collaterally estop prosecution of the instant action.  See Sackett v.

1    Hansen, 2005 WL 425307, at *3 (S.D. Iowa 2005) (dismissing a federal action challenging

2    plaintiff's termination from the City of Des Moines Section 8 housing program and stating that

3    the court did not have jurisdiction to review actions of local public housing agencies).

4           Assuming, arguendo, that the plaintiff's claims were not so circumscribed by her

5    failure to pursue a writ of administrative mandamus or her prior administrative hearing, her

6    substantive causes of action do not state a claim as addressed below.

7           C.    National Origin Discrimination

8           Plaintiff alleges that she was discriminated against on the basis of her Chinese

9    national origin, in violation of Title VI of the Civil Rights Act of 1964.  (Dkt. No. 27 at 1.)

10   Section 601 of Title VI of the Civil Rights Act of 1964 provides:

11              No person in the United States shall, on the ground of race,
                color, or national origin, be excluded from participation in, be
12              denied the benefits of, or be subjected to discrimination under
                any program or activity receiving Federal financial assistance.
13

14   42 U.S.C. § 2000d.  This provision, however, only prohibits intentional discrimination, not

15   actions that have a disparate impact upon protected classes.  Lonberg v. City of Riverside, 571

16   F.3d 846, 850 (9th Cir. 2009); Guardians Ass'n v. Civil Serv. Comm'n, 463 U.S. 582 (1983).

17          Moreover, there is no private right of action to enforce disparate-impact

18   regulations promulgated under Title VI of the Civil Rights Act of 1964.  Alexander v. Sandoval,

19   532 U.S. 275 (2001).  In Sandoval, a class of non-fluent English speakers sued the Alabama

20   Department of Public Safety, alleging that its administration of an English-only driver's license

21   test violated federal law.  The United States Supreme Court held that there is no private right of

22   action to enforce disparate impact regulations promulgated under Title VI of the Civil Rights Act

23   of 1964.  Id. at 292 (reversing the judgment of the Eleventh Circuit Court of Appeal).

24          Plaintiff's Title VI claim is arguably premised upon the regulations governing the

25   Section 8 housing assistance program.  However, plaintiff has not referenced any part of those

26   regulations that incorporate a disparate impact standard with respect to denial of housing benefits

for failure to report income.  And, even if she had done so, no private right of action exists upon which to enforce her title VI claims.  Therefore, to prevail on her Title VI claim, plaintiff must allege discriminatory intent in the VHA's challenged actions.  This, plaintiff has not done.  She alleges that the VHA knew that she could not read or write English, but "failed to accommodate [her] limited English proficiency through all the years I was in their Section 8 program, and terminated me from the program with no due consideration given to the fact that I could not understand the program requirements in English."  (Dkt. No. 27 at 5.)

However, a classification on the basis of language spoken, by itself, does not identify members of a suspect class.  Carmona v. Sheffield, 475 F.2d 738, 739 (9th Cir. 1973) (holding that persons who spoke only Spanish were not denied due process of law because the state of California did not provide them with Spanish-speaking interviewers or written communications in Spanish in connection with unemployment insurance benefits claims); see also Soberal-Perez v. Heckler, 717 F.2d 36, 41 (2nd Cir. 1983) (dismissing an action on behalf of individuals with limited English abilities who had been denied Social Security benefits by the Secretary of Health and Human Services).

Plaintiff alleges that because the VHA spoke with her in English that she "could mostly not understand," that the VHA "failed in their federal duty to convey an understanding to me of my notification requirements to the VHA."  (Dkt. No. 61 at 5.)  There is no authority to support this broad-sweeping statement regarding federal communications duties.  Moreover, there is no disparate impact on those persons of Chinese origin, all non-English speaking people are equally affected by English-only forms.  "The purpose of the [Act] is to provide "for fair housing throughout the United States.  Nothing could be fairer than to apply the English language uniformly to all tenants of whatever national origin."  Vialez v. New York City Housing Auth., 783 F. Supp. 109, 124 (S.D.N.Y. 1991) (citing 42 U.S.C. § 3601).

Plaintiff, in essence, alleges that she somehow managed to navigate through the application process and decided to knowingly accept and use financial benefits from the Section

8 housing program, but that she was unable to understand any of the forms or papers that she was

signing. (Dkt. No. 27 at 2 "They did not read all the words to me on all the papers and forms, but

I thought everything was okay because they were helping me to have a place to live."). Despite

her frustration with the offered protocol, plaintiff's amended complaint does not contain

allegations sufficient to survive a motion to dismiss for failure to state a claim of discrimination

against the VHA under Title VI.[7]  Therefore, the undersigned will recommend that this claim be

dismissed.

        D.     <u>Americans With Disabilities Act</u>

To prove that the VHA has violated Title II of the ADA, plaintiff must allege

and/or show that: (1) she is a qualified individual with a disability; (2) she was denied services or

otherwise discriminated against; and (3) such discrimination was motivated by plaintiff's

disability. <u>Weinreich v. Los Angeles County Metropolitan Trans. Auth.</u>, 114 F.3d 976, 978 (9th

Cir. 1997).  Plaintiff alleges that because she has "an SSI disability, I should be protected from

unreasonably being forced to lose a federal entitlement for which I am qualified, and have to live

on the street." (Dkt. No. 27 at 8-9.)  She claims that the VHA should make the Section 8 housing

accessible to her because of her SSI disability.  (<u>Id</u>. at 8.)  In her amended complaint, nowhere

does plaintiff allege that she has a qualifying disability under either the ADA or even infer that

she was excluded from services *because of* her disability.  Similarly, the undersigned will

recommend that this claim be dismissed.

        E.     <u>Dymally-Alatorre Bilingual Services Act</u>

Plaintiff also brings forth a state law claim under the Dymally-Alatorre Bilingual

---

[7] Plaintiff also references Presidential Executive Order 13166, which sets goals for programs receiving federal funding to be made accessible to otherwise eligible persons who are not proficient in the English language.  However, by its own terms, it is not enforceable by private individuals.  Section 5 of that Executive Order expressly states: "This order is intended only to improve the internal management of the executive branch and does not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its agencies, its officers or employees, or any person."  Hence, no private right of action exists under Executive Order 13166.

1  Services Act.  The undersigned will recommend that the federal court decline to exercise

2  supplemental jurisdiction over any alleged state law claims.  28 U.S.C. § 1367(c)(3).

3  IV.    CONCLUSION

4         In sum, plaintiff is estopped from bringing the instant action because she did not

5  exhaust her administrative remedies and she is precluded from relitigating her claims under the

6  principles of collateral estoppel.  Additionally and alternatively, plaintiff's federal causes of

7  action fail to state claims upon which relief may be granted.

8         For the foregoing reasons, it is hereby recommended that:

9         1.      Defendant's request for judicial notice be granted;

10        2.      Defendant's motion to dismiss be granted;

11        3.      This action be dismissed; and

12        4.      The Clerk of Court be directed to close this case and vacate any pending

13                dates.

14        These findings and recommendations are submitted to the United States District

15  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

16  days after being served with these findings and recommendations, any party may file written

17  objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a

18  document should be captioned "Objections to Magistrate Judge's Findings and

19  Recommendations."  Any response to the objections shall be filed with the court and served on

20  all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file

21  objections within the specified time may waive the right to appeal the District Court's order.

22  ////

23  ////

24  ////

25  ////

26  ////

1   <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57

2   (9th Cir. 1991).

3   DATED:  November 29, 2010

4

5                                                    /s/ Kendall J. Newman

6                                                    KENDALL J. NEWMAN
                                                     UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26